## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No: 23-cr-00040 (TNM) |
| v. | |
| BRANDON CAVANAUGH, | 40 U.S.C. § 5104(e)(2)(G) |
| Defendant. | |

### STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Thomas Carey, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count

of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Defendant's Participation in the January 6, 2021, Capitol Riot*

8. On January 4, 2021, Defendant flew to Washington D.C. from Los Angeles, California.

9. On January 6, 2021, Defendant walked to the U.S. Capitol wearing a black leather jacket, blue plaid shirt, and red beanie. He also carried a large blue "AF [America First]" flag. At approximately 2:54 p.m. that day, Defendant entered the U.S. Capitol along with other individuals through the West Stairs Door. While still carrying the AF flag, Defendant paused to record or photograph the area before proceeding up the hallway.

10. At approximately 3:02 p.m., CAVANAUGH climbed the stairs with a group of individuals. He appeared to record the contents and occupants of a security guard desk just outside the doors. Defendant then went down the stairs to the first floor, walked down the hallway with a group of individuals, and exited the Capitol building through the North Door at approximately 3:07 p.m.

11. Defendant videotaped himself on his cell during the events of that day. In on video, Defendant is walking up the stairs towards the U.S. Capitol building and declares, "We're storming the capitol building." In another video, Defendant is walking through an open entryway in the U.S. Capitol building where he announces, "We are forcing our way in for the third or fourth time. You can only push us out so many times. We're gonna take a nice tour." Alarms can be heard in the U.S. Capitol building at that time.

12. Defendant posted the next day, "Hey HB [Huntington Beach] groyper here I just got back from the capitol!! I got inside!!" He added it "was epic".

13. Defendant was interviewed post-arrest. When asked by law enforcement about being in the U.S. Capitol building, Defendant stated, "Right when I got in, I realized maybe I shouldn't be in here." When asked why he thought this, Defendant noted there was broken glass on the floor.

14. Defendant willfully and knowingly entered the U.S. Capitol Building and had reason to know that he did not have permission to do so. Defendant further admits that while inside the Capitol, defendant willfully and knowingly paraded, demonstrated, or picketed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: _____
Joseph Huynh
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Brandon Cavanaugh, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my

own free will.  No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: __4/14/23__                          _____
                                           Brandon Cavanaugh
                                           Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully.  I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: __4/14/23__                          _____
                                           Nathan Gjesdal
                                           Attorney for Defendant